In Re BROOKS' ESTATE.

JENSON v. OGDEN STATE BANK et al.

No. 4882.   Decided March 30, 1934.   (30 P. [2d] 1065.)

*Henderson & Johnson,* of Ogden, for appellant.

*De Vine, Howell & Stine* and *C. R. Hollingsworth,* all of Ogden, and *Geo. N. Lawrence,* of Salt Lake City, for respondents.

ELIAS HANSEN, J.

This appeal is prosecuted by David Jenson from a decree wherein he, as former administrator of the estate of Clarence W. Brooks, deceased, was directed to deliver to the Ogden State Bank, his successor as such administrator, the assets found by the court to belong to such estate. After a hearing was had upon the final account and report rendered by Jenson as administrator of that estate, the court below found that Jenson as such administrator was chargeable with $8,970.16 in assets of the Clarence W. Brooks estate after allowing Jenson credit for all moneys properly expended by him as such administrator. The trial court ordered Jenson to pay that amount to his successor, the Ogden State Bank, together with interest thereon at the rate of 8 per cent per annum from and after June 9, 1928, until paid. Jenson complains of the judgment because, as he claims, under the evidence, he, as the former administrator of the Clarence W. Brooks estate, is not properly chargeable with so large an amount. All of the files in the Clarence W. Brooks estate are before us on this appeal; they show that Clarence W. Brooks died intestate at Ogden City, Weber county, Utah, on May 24, 1918. Mr. Brooks left surviving him as his heirs at law his widow, Mary Brooks, two brothers, three nephews, and three nieces. On August 14, 1918, Mary Brooks was appointed administratrix of the estate of her deceased husband, Clarence W. Brooks. She

continued to act as administratrix of the estate until her death February 2, 1924. During the whole of the time Mrs. Brooks served as administratrix, appellant acted as attorney for her personally and for the estate. The inventory and appraisement filed by Mrs. Brooks showed the estate to be of the appraised value of $58,161.15. For the purpose of fixing the inheritance tax to be paid to the state of Utah, the property of the estate was appraised at $52,582.35. The estate consisted of real property—notes, stocks, bonds, and other personal property. In the course of administration of the estate by Mrs. Brooks, various parcels of real estate and personal property were sold under order of court. On September 16, 1918, Mrs. Brooks was granted $100 per month as family allowance; the same to commence on May 24, 1918, the date of the death of Mr. Brooks. Under date of December 8, 1919, the court fixed the inheritance tax at the sum of $1,215.51 and directed the same be paid to the state treasurer of the state of Utah. Three decrees of partial distribution were made and entered in the estate: One dated December 30, 1919, by which $8,000 was ordered distributed; one under date of August 13, 1920, by which $8,000 was ordered distributed; and one under date of February 17, 1922, by which $7,500 was ordered distributed to the heirs. Mary Brooks rendered three accounts: One under date of November 25, 1919; one under date of June 30, 1920; and one under date of January 31, 1922. The three accounts so rendered by Mary Brooks were, by the court, approved, and accordingly an order of approval was signed by the court and filed in the cause. In the first account rendered by Mrs. Brooks under date of December 10, 1919, there appeared an item of $1,215.51 as having been paid to the state treasurer as and for inheritance tax. There also appeared in that account an item of $1,900 as and for family allowance to Mary Brooks. In the second account rendered by Mrs. Brooks no claim under the head of family allowance was made by her, but she did claim a credit of $6,500 as having been "paid to Mary Brooks." Apparently that

item was for money paid to her pursuant to the first decree of partial distribution. So, likewise, in the third account of Mary Brooks dated January 31, 1922, no claim was made by her for family allowance. She did claim credit for $4,000 paid to her as a "distributive share." Apparently, that item was for the amount theretofore ordered distributed to her by the second decree of partial distribution.

Under date of May 21, 1924, appellant David Jenson applied for letters of administration of the estate of Clarence W. Broks, deceased. In his petition for letters he alleged that the probable and approximate value of the estate was $10,000. In the order appointing him administrator it was found by the court that "there still remains as the property and assets of the said estate, not yet distributed, certain real and personal property of the probable and approximate value of $9,326.00." The court fixed the amount of bond to be given by Mr. Jenson at $19,000 if a personal bond, and $11,000 in the event a surety bond was given. Jenson qualified as administrator and letters of administration were issued to him under date of July 21, 1924. He continued to act as administrator until upon application of some of the heirs of Clarence W. Brooks, deceased, the court, on July 27, 1926, ordered him suspended from further acting as administrator and further ordered that he show cause why his letters of administration should not be revoked. The court fixed August 9, 1926, as the date for Mr. Jenson to show cause why his letters of administration should not be revoked. On that date he resigned as administrator. His resignation was accepted and he was ordered to render an itemized account of all his receipts, disbursements, and doings in the estate and to deliver to his successor all of the property, files, papers, and documents in his possession belonging to the estate. Thereupon letters of administration de bonis non were issued to the respondent Ogden State Bank. It continued to act as administrator until the entry of the judgment here under review. At the time Jenson resigned as administrator, he filed a report and

account of his administration. He also filed a report and account of the administration of the estate had by Mary Brooks covering the period from her third account to her death. Later Mr. Jenson filed an amended report and account. The judgment appealed from was made and entered after a hearing was had upon the account filed by Mr. Jenson for and on behalf of Mary Brooks and upon his amended report and account and the objections filed thereto by some of the heirs of Clarence W. Brooks, deceased. Mr. Jenson testified at considerable length concerning his account. His testimony is very unsatisfactory. It appears from his testimony that he either knew but little of the affairs of the estate, or was unwilling to testify concerning what he did know. It does appear, however, from his testimony: That during the time Mrs. Brooks was acting as administratrix most of the money belonging to the estate was received and disbursed by Mr. Jenson; that he deposited moneys belonging to the estate in various banks and in various accounts; that neither he nor Mrs. Brooks paid the state treasurer the $1,215.51 in inheritance tax; that while Jenson was acting as attorney for Mrs. Brooks and for the estate he, from time to time, borrowed money from Mrs. Brooks; that at one time Mrs. Brooks loaned him $15,000; that Mrs. Brooks owned a substantial estate independent of her interest in the estate of her deceased husband; that prior to her death Mrs. Brooks made a will in which Mr. Jenson was named as executor to serve without bond; that upon the death of Mrs. Brooks her will was admitted to probate and Mr. Jenson was appointed the executor thereof; that some money was paid to Mrs. Brooks as and for family allowance from the assets of the estate of Clarence W. Brooks, deceased, but the exact amount thereof is a matter of conjecture; that the accounts rendered by Mrs. Brooks in the Clarence W. Brooks estate were prepared by Jenson, who at the hearing of the accounts and reports of the estate testified concerning the same; that Mr. Jenson signed the name of Mrs. Brooks to at least one of the accounts; that substan-

tially all of the business connected with the Clarence W. Brooks estate was conducted by Mr. Jenson; that he it was who drew and signed the checks and paid the expenses of the estate and also paid to the distributees the money ordered distributed to them by the decrees of partial distribution; that after he was appointed administrator of the estate of Clarence W. Brooks, he paid to himself from the assets of that estate, without an order of court, moneys as and for attorney fee for services rendered in that estate. While Mr. Jenson denied having misapplied any of the property of the Clarence W. Brooks estate the only inference that can reasonably be drawn from the whole of his testimony is that he did appropriate to his own use a considerable portion thereof.

Appellant complains of the judgment appealed from because, as he claims, he should have been, but was not, given credit for $1,215.51 which the court fixed as an inheritance tax and directed that Mrs. Brooks pay the same to the state treasurer of Utah. He also complains because the court refused to allow him credit for family allowance from the time intervening between the first and third accounts filed by Mrs. Brooks. The time intervening between those two accounts was 19 3/5 months. As already stated, the family allowance fixed by the court was $100 per month. Thus appellant claims that he should have been given credit for an additional $1,960 on account of family allowance. Apparently the court below refused to allow credit for the family allowance for the time intervening between the first and third accounts filed by Mrs. Brooks because she having failed to claim such credit, thereby waived her right thereto, and that Jenson was not entitled to credit for family allowance to which Mrs. Brooks had waived her right. In this connection it should be noted that in his account Jenson was given credit for $1,900 claimed and allowed Mrs. Brooks in her first account and he also was given credit for family allowance at $100 per month from the date of the third account to the date of the death

of Mrs. Brooks. It is appellant's contention that he should have been allowed credit for $1,215.51 allowed Mrs. Brooks for the payment of the state inheritance tax and should have been allowed credit at the rate of $100 per month for the entire period extending from the date of the death of Clarence W. Brooks to the date of the death of Mary Brooks. In support of such contention appellant cites and relies upon the following cases: In re *Raleigh's Estate,* 48 Utah 128, 158 P. 705, 706; *Moyes* v. *Agee,* 53 Utah 360, 178 P. 753; In re *Moore's Estate,* 170 Cal. 60, 148 P. 205; In re *Welch's Estate,* 106 Cal. 427, 39 P. 805; In re *Nolan's Estate,* 145 Cal. 559, 79 P. 428, 429; *Bacon* v. *Perkins,* 100 Mich. 183, 58 N. W. 835, and In re *Foreman's Estate,* 59 Okl. 1, 157 P. 279. The cases cited from this jurisdiction, as well as some of the other cited cases, are authority for the doctrine that "an executor's or administrator's account which has been allowed can be assailed only in equity and upon the same ground as other judgments." We, however, are unable to see how that doctrine aids appellant in the instant case. The judgment appealed from does not conflict with the order granting Mrs. Brooks a family allowance, nor may it be said to be in conflict with the order approving the payment of the inheritance tax. The former orders were in no sense revoked or amended by the judgment complained of. The judgment appealed from is but the means properly employed by the court below and calculated to enable it to enforce ultimate compliance with its former orders. It was the duty of David Jenson, as administrator of the estate of Clarence W. Brooks, deceased, to account for all of the assets of the estate which came into his possession as such administrator. On the other hand, let it be conceded that he may not in this proceeding be required to account for any property which came into his possession as the attorney for Mary Brooks while she was the administratrix of her deceased husband's estate unless such property came into his possession, or he was able to reduce it to his possession, during the time he was acting as such adminis-

trator. The mere fact, however, that Mrs. Brooks was entitled to a family allowance out of the estate is beside the issue, as is also the fact that the probate court approved an account wherein Mrs. Brooks claimed that the sum of $1,215.51 was due and had been paid to the treasurer of the state of Utah as and for an inheritance tax. The ultimate end to be accomplished by a probate proceeding is to vest possession, or both title and possession, of the property of the estate in those entitled thereto. The duties of an administrator are not completed until the property of the estate has been delivered to the persons to whom the probate court directs that it shall be delivered whether it be a claim allowed against the estate or a decree of distribution. The administrator has not performed the trust imposed upon him by law until and unless he pays the claim or delivers the property to the distributee. R. S. Utah 1933, 102-9-25, 102-11-20, 102-11-21, 102-12-19. The duties of an administrator are not fully performed until he has not only accounted for, but also distributed, as ordered by the court, all of the assets of the estate which has come into his possession as administrator. *Ehrngren* v. *Gronlund*, 19 Utah 411, 57 P. 268. Obviously, the duties of Mrs. Brooks while she was administratrix and the duties of Mr. Jenson while he was administrator were not performed with respect to the money belonging to the estate which should have been applied to the payment of inheritance tax until the tax was paid and the property of the estate relieved from the lien of the tax. So, likewise, Mr. Jenson was not entitled to deduct from the property which came into his possession as administrator any money owing upon the family allowance unless it was actually applied to that purpose. The bond which he gave imposed upon the maker thereof a liability to account for any injury that the estate and those interested therein might sustain because of any failure of Mr. Jenson as administrator, not only to account to the court for the property which he received as administrator, but also because of any failure to deliver the assets of the estate to the

persons entitled thereto as ordered by the court. The estate of Clarence W. Brooks retained an interest in the $1,215.51, which should have been paid by Mrs. Brooks as an inheritance tax, until such tax was paid and the estate relieved from the lien of the tax. The same is true with respect to the family allowance. Thus David Jenson as administrator of the Clarence W. Brooks estate has no right to retain or receive credit for money which should have been, but was not, paid as an inheritance tax and family allowance. The court in which the estate of Clarence W. Brooks was being probated retained jurisdiction of the property of the estate and the administration thereof until its orders were complied with. Any other doctrine would render the court powerless to compel its officers to comply with its orders.

The controlling question therefore to be determined on this appeal is: Did the court below by the order appealed from require appellant to deliver to the newly appointed administrator more property (after making deductions of the amount properly paid out by him) than ■ came into his possession as administrator of the estate? The trial court in substance found that at the time of the death of Mary Brooks there was cash on hand belonging to the estate of Clarence W. Brooks the sum of $4,012.24 which was in the possession of appellant at the time he was appointed and assumed the duties of administrator of that estate; that after his appointment Mr. Jenson received the sum of $4,675.18. Mr. Jensen was charged with the total sum of $8,687.42. He was given credit for $864.60. There was thus, as found by the court, the sum of $7,822.82 which Jenson should have had on hand at the time he, on August 9, 1926, resigned as administrator of the Clarence W. Brooks estate. In the judgment appealed from the court below required Jenson to pay interest on the $7,822.82 at the rate of 8 per cent per annum from August 9, 1926, to June 9, 1928. The amount thus charged against Jenson was $1,-147.34. Appellant makes no claim that he should not be charged with legal interest on the money belonging to the

estate from and after the time he resigned as administrator and the court directed him to deliver the assets of the estate to his successor. He does claim, however, that he was not chargeable with as much as $7,822.82 on the date he resigned, and that therefore the interest charged against him was correspondingly excessive.

As heretofore stated in this opinion, appellant alleges in his petition for letters of administration of the Clarence W. Brooks estate that the remainder of the assets of the estate was of the approximate value of $10,000. In the order appointing Mr. Jenson as administrator, the court found that the approximate value of the remainder of the estate was $9,326. After appellant was appointed administrator he did not file an inventory of the property which came into his possession as administrator. After his resignation the only property which he turned over to his successor was twenty-three notes of the face value of $4,866 and some certificates of stock in various mining and other companies. All of the notes were of long standing, some bearing date as far back as 1905 and none later than 1919. Nothing had been paid on any of the notes excepting $25 on one note. When in 1919 the original inventory and appraisement of the property of the estate was made and filed, a number of the notes which were delivered to the bank were appraised as of no value. All of the stock certificates were appraised as having no value. It is thus reasonable to assume that the notes and certificates which Jenson turned over to the Ogden State Bank were of no value; that when Jenson was appointed administrator he knew such to be a fact and that the notes and certificates of stock formed no part of Jenson's estimate that the assets of the estate were at that time of the probable value of $10,000. In the third and last account rendered by Mrs. Brooks she reported cash on hand in the sum of $9,581.63 after deducting all of the money claimed to have been paid out by her. Of the cash on hand when the third account was rendered the sum of $7,500 was distributed to the heirs pursuant to the third decree of par-

tial distribution leaving cash on hand in the sum of $2,-081.63. According to the report and account which Jenson filed for and on behalf of Mrs. Brooks as administratrix, she received assets belonging to the estate in the sum of $3,048.43 after her third account was approved. While Jenson was acting as administrator of the estate, he, according to his statement and report, received cash belonging to the estate in the sum of $4,645.18 in addition to $39.97 which was on deposit to the credit of Mary Brooks, administratrix, in two Ogden banks. Thus Mrs. Brooks was chargeable as administratrix with cash of the estate in the sum of $5,130.06 at the time of her death. Add to that the money of the estate which Jenson received as administrator, exclusive of the $39.97, on deposit in the banks in the name of Mary Brooks, administratrix, we have a total cash item of $9,775.24. There should also have been on hand the $1,215.51 for which credit was taken as having been paid as inheritance tax but which was not paid, making a grand total of $10,990.75. In his final account Jenson was allowed credit, including his commission as administrator, in the sum of $864.70. No vouchers were produced which showed, or tended to show, that he was entitled to any additional credit. He did claim an attorney fee in the sum of $12,500 of which amount he stated he had received $10,268.34. During the time Mary Brooks was acting as administratrix, attorney's fee in the sum of $4,750 was allowed. The court below refused to allow Jenson any fee in addition to the $4,750 paid to him during the time Mrs. Brooks was acting as administratrix. Appellant does not assign as error the refusal of the court to allow him additional attorney's fees. No claim was made by Jenson that he as executor of the last will and testament of Mary Brooks, deceased, had received from himself as administrator of the estate of Clarence W. Brooks, deceased, any moneys as and for the family allowance awarded to Mrs. Brooks in the Clarence W. Brooks estate.

From what has been said it will be seen that, if the re-

mainder of the estate of Clarence W. Brooks was of the approximate value of $10,000 at the time Jenson was appointed administrator, there should have been on hand at the time he resigned to be turned over to his successor at least the sum of $7,822.82, and, likewise, it appearing that the state inheritance tax was not paid and there being no evidence tending to show that Mrs. Brooks actually received more than $1,900 in family allowance, there should have been cash in the hands of Jenson to be turned over to his successor at least as much as he was directed to turn over.

No claim is made that any of the accounts of Mrs. Brooks which were prepared by Mr. Jenson were in error. Nor is it claimed that she misapplied any of the money belonging to the estate. Neither does Jenson claim or admit that he misapplied any of the money of the estate while he was acting as attorney for Mrs. Brooks, but on the contrary he testified that the remainder of the money belonging to the estate was in his possession at the time he was appointed administrator. It would be a rather anomalous position for appellant to contend that the trial court was in error in finding that he (appellant) acted fairly and honestly in his dealing with Mrs. Brooks while acting as her attorney in managing the business of the estate. If, as he testified, he did deal honestly with the property belonging to the estate during the time he was attorney for Mrs. Brooks as administratrix, there is no escape from the conclusion that he had in his possession at the time he was appointed administrator at least the amount of money and property found by the probate court. Moreover, if appellant, during the time he was acting as attorney for Mrs. Brooks, misapplied any of the money belonging to the estate, it became his duty, after he was appointed administrator, to recover the same for the use and benefit of the estate. If Mrs. Brooks misappropriated the $1,215.51 which should have been paid to the state as an inheritance tax, it was likewise the duty of Jenson, after he was appointed administrator, to recover the same either from her estate or upon the bond

which she gave as administratrix of the Clarence W. Brooks estate. R. S. Utah 1933, 102-11-10. If he failed to perform such duty to the injury of the estate and those interested therein, he and his bondsmen are liable for the dereliction. An administrator of an estate occupies a fiduciary relation with respect to the estate and those interested therein. His duties require him to exercise the utmost good faith in dealing with property intrusted to his custody. When called upon to render an accounting, he must be able to show that he has faithfully performed that duty. If he fails to do so, he and his bondsmen must make good any loss sustained by reason of such failure.

The judgment appealed from is affirmed. Respondents are awarded costs.

FOLLAND, J., concurs.

EPHRAIM HANSON, J.

I concur in the result reached in the opinion by Mr. Justice ELIAS HANSEN.

MOFFAT, J. (dissenting).

The prevailing opinion, I think, fails fundamentally to distinguish the different capacities in which appellant served as well as the different liabilities and relationships required to be recognized and considered growing out of them. For the reasons hereinafter stated, I cannot concur in the prevailing opinion of the court.

Clarence W. Brooks died intestate on the 24th day of May, 1918. On petition duly filed, Mary Brooks, decedent's widow, on the 5th day of August, 1918, was appointed administratrix of the estate of her deceased husband, and qualified by giving a bond in the sum of $72,500 and on the same day letters of administration were issued to her.

Chronologically, during the administration of the estate of Clarence W. Brooks, the following occurred:

August 4, 1918, petition for family allowance was filed. September 16, 1918, an order was entered by the court

allowing Mary Brooks a family allowance of $100 per month, which was to commence from the date of the death of decedent, on May 24, 1918. Due notice of this hearing was given.

December 8, 1919, the court entered an order fixing the inheritance tax at the sum of $1,215.51.

A petition for partial distribution and settlement and allowance of account to date was filed December 10, 1919. In this account Mary Brooks took credit for $1,900 on account of family allowance, also the item of $1,215.51 for inheritance tax was presented and allowed.

On July 9, 1920, Mary Brooks filed, as administratrix, a second account and petition for partial distribution. On September 15, 1920, the court entered a decree approving this second account and partial distribution. No item for family allowance appeared in that account.

Nothing more appeared to be done in the proceedings until February 1, 1922, when the administratrix filed a third account and petition for partial distribution.

On February 17, 1922, this account was approved and petition granted. No item for family allowance appeared in this account.

On February 12, 1924, Mary Brooks, administratrix of the estate of Clarence W. Brooks, deceased, died.

On May 21, 1924, David Jenson filed a petition praying for letters of administration upon the estate of Clarence W. Brooks, deceased.

On July 21, 1924, the court entered an order appointing David Jenson as administrator of the estate of Clarence Brooks, deceased, and fixing his bond in the penal sum of $19,000, if personal, and $11,000 in the event a surety bond was furnished, and on the next day letters of administration were issued to him.

On the 9th day of August, 1926, after a petition for removal of David Jenson as administrator of the estate of Clarence W. Brooks, deceased, had been filed and on the day, but before the matter came on for hearing, David Jenson

resigned as administrator, and on the same day the court entered an order accepting the resignation. This order also provided that David Jenson should render and file a detailed and itemized statement of account of all his receipts and disbursements. He was also ordered to turn over to the Ogden State Bank, the newly appointed administrator in his stead, all of the assets of the estate of Clarence W. Brooks, deceased.

On the 10th day of August, 1926, letters of administration de bonis non were issued to the Ogden State Bank.

On the 18th day of August, 1926, David Jenson filed what is entitled an "Administrator's Report," which contained, among other matters, a statement of the condition of the estate at the time of allowance and settlement of the third and last account rendered by Mary Brooks, as administratrix of the estate of Clarence W. Brooks, deceased. There is also appended to said report a schedule entitled "Residue of Property and Assets." This report contains no dates or values. It is merely a list of real property and notes and stocks alleged to belong to the estate.

On the 30th day of January, 1928, formal objections to the "Administrator's Report" were filed.

In the meantime many petitions, orders, sales, motions, and transactions had found place in the record of the probate court. The above will sufficiently indicate what has taken place to correlate what follows.

To the objections to the "Administrator's Report," David Jenson filed a demurrer February 9, 1928. At this point in the proceedings there occurs in the record this order: "And it is further ordered that you, David Jenson, file in court on or before said March 9th, a complete account of the administration of Mary Brooks from the date of the approval of her third account, as administratrix of the estate of Clarence W. Brooks, to the date of her death, itemizing the same showing the dates and amounts received and from whom and from what source received, the dates and amounts disbursed and to whom and for what disbursed,"

etc., "and it is further ordered that you file in court on or before said March 9th a complete account, as administrator de bonis non of the estate of Clarence W. Brooks, deceased, from the date of the death of Mary Brooks, administratrix, up to and including the date of your resignation," etc.

The evidence then proceeds, through the balance of the hearing, apparently on the assumption that David Jenson should be required to account in the Clarence W. Brooks estate from the time of the rendering of the third account by Mary Brooks, administratrix, February 17, 1922, until the time of the resignation of Davivd Jenson, as administrator de bonis non, on the 9th day of August, 1926.

Upon conclusion of the taking of testimony the court made findings and entered an order:

"That there was on hand belonging to the estate of Clarence W. Brooks, deceased, at the time of the death of Mary Brooks, administratrix, cash in the sum of $4012.24, and the same and the whole thereof was then in the possession of David Jenson and the same continued to remain in his possession until July 22, 1924, on which day he qualified as administrator herein, and as successor to said Mary Brooks, administratrix, and the same sum came into his possession as administrator herein; that David Jenson after his appointment as administrator, received additional cash belonging to said estate in the sum of $4675.18, thereby making the total sum of $8,-687.42."

Some credits and allowances are then made and a net balance of $7,822.82 fixed as the amount which is a part of the estate. Interest is calculated and added making a total sum of $8,970.16, which "said David Jenson, former administrator," is required "forthwith to deliver. * * * And that thereupon said David Jenson, Administrator, together with the surety upon his bond as such administrator, shall be released from any and all further liability."

The appellant David Jenson assigns error upon a number of findings upon which the above order or judgment is based. The first assignment attacks part of finding No. 9, which, in part, reads as follows:

"In the first account and report of Mary Brooks, administratrix, filed December 10, 1919, credit was taken by her and allowed by the court in its decree made herein on December 30, 1919, and filed December 31, 1919, for $1215.51 as inheritance taxes and claimed to have been paid to the State of Utah."

All parties recognize that the court in arriving at the amount that David Jenson, as administrator de bonis non of the estate of Clarence W. Brooks, deceased, should account for, included this item of $1,215.51 allowed by the court in December, 1919, for the payment of inheritance taxes. It is admitted these taxes were never paid. There is no attempt to trace this specific fund. At the time of making the order that amount was no doubt on hand and a part of the estate. The evidence also discloses that David Jenson as attorney for Mary Brooks, administratrix, had possession of and handled most of the funds and accounts of the estate. David Jenson as administrator de bonis non of the estate of Clarence W. Brooks, deceased, and his sureties, can be held only for such sums of money or property as came into his hands after his appointment and qualification on July 22, 1924. Mary Brooks, as administratrix, was allowed that sum of $1,215.51 for the purpose of paying inheritance taxes in 1919. She and her sureties must account for that sum. If such sum was drawn from the estate funds and paid to David Jenson for the purpose of paying inheritance taxes and he converted or embezzled the same between December 31, 1919, and July 22, 1924, David Jenson, personally, and not as administrator, would be liable, and David Jenson's sureties could not be held liable therefor.

It may be argued, however, that the $1,215.51 was a part of the estate at the time of its allowance for the payment of inheritance taxes December 31, 1919, and from the admitted fact that the taxes were not paid that the said sum remained in the estate. The allowance of that account by the court constitutes a judgment, it is final, and may not be attacked except in a court of equity. "An executor's or administrator's account which has been allowed can be assailed only

in equity and upon the same grounds as other judgments."
In re *Raleigh's Estate,* 48 Utah 128, 158 P. 705, 709; *Moyes
et al.* v. *Agee,* 53 Utah 360, 178 P. 753.

The probate court should have required the voucher from
the state treasurer to be filed with the court, the same as
all other vouchers, as required by the statute before the
account was approved. Merely because the probate files fail
to show the filing of the proper voucher constitutes no
greater reason for holding the succeeding administrator
for this item, without other evidence, than for holding him
for any other item in the account, for example, the family
allowance. If Mary Brooks, administratrix, had a credit in
the account for $1,215.51 and she failed to require her at-
torney or other agent to apply the fund to the proper credit
it is the responsibility of Mary Brooks, now her estate and
her sureties. When that account was allowed, that sum
ceased to be a part of the estate, and an attempt on the part
of any one to recover it for the estate would be met by the
decree of the court. Mary Brooks would have a claim against
David Jenson personally, had she turned those funds over
to him and he had failed to do his duty as her agent by pay-
ing the same to the state treasurer, or the Attorney General
for the state treasurer.

Counsel for respondents cite section 7879, Comp. Laws
1917, which provides:

"Mistakes in settlement may be corrected at any time before final
settlement and discharge, and, after that time, by equitable proceed-
ings, on such showing as will justify the interference of the court."

The correctness of the account of December, 1919, is not
questioned or attacked in this proceeding, and the adminis-
tratrix who rendered it and had it allowed is deceased. She
may have misplaced her confidence and it may have been
betrayed, but that does not change the legal aspects of the
situation as here presented.

The second and subsequent assignments of error relate to
the treatment by the court of the funds relating to the fam-

ily allowance. On the 16th day of September, 1918, the court entered an order granting to Mary Brooks a family allowance of $100 per month, commencing from the date of the death of Clarence Brooks, which occurred on May 24, 1918. This order remained in full force and effect until the death of Mary Brooks, which occurred on the 12th day of February, 1924. Upon the submission of the first account, December, 1919, Mary Brooks included in the account an item of family allowance in the sum of $1,900 which was approved. In her second and third accounts no item for family allowance appeared. The third account was filed in February, 1922.

In requiring the administrator David Jenson to account, the court gave him credit for the family allowance, the order for which was approved December, 1919, in the sum of $1,900; also gave him credit for the family allowance from the 1st day of February, 1922, till the date of the death of Mary Brooks on the 12th day of February, 1924, in the sum of $2,433.33; but refused to give credit for the family allowance for the period between the dates of rendering the first and third accounts, viz., December 12, 1919, and February 1, 1922. Put in the form of totals, the period from the date of the death of Clarence W. Brooks to the date of the death of Mary Brooks, the period covered by the order for the family allowance was five years, eight months, and eighteen days, or 68 3/5 months, at $100 per month, which amounts to a total of $6,860; whereas, the court allowed him a credit of $1,900 plus $2,433.33, or $4,333.33. The suggested reason why the court did not allow the larger amount is that Mary Brooks in her second and third accounts did not claim credit for the family allowance. This is indicated in finding No. 10 where the trial court found:

"That in her second account and report covering the period from December 10, 1919, to July 9, 1920, and in her third account and report covering the period from July 9, 1920, to February 1, 1922, said administratrix did not take or claim credit for any moneys paid out by her during said period of time to said wife for said allowance. That

no sum was paid from the estate herein for said allowance between December 10, 1919, and February 1, 1922."

As heretofore indicated, appellant assigns error because of this finding. We think the assignment is well taken. Section 7643, Comp. Laws Utah 1917, provides:

"When a person dies leaving a surviving wife, husband, or minor children, they shall be entitled to remain in posession of the homestead and to the use of the property exempt from execution until otherwise directed by the court; and during administration shall receive such allowance out of the estate as the court may deem necessary and reasonable for their support. Such allowance may date from the death of the decedent, but in case of insolvent estate shall not continue for longer than one year, and must be paid in preference to all other charges except expenses of last sickness and funeral expenses of the decedent, and costs and charges of administration. The court may, in its discretion, exclude from such family allowance, except homestead rights, any person who may have a separate property or income."

This court has heretofore held that the widow has an absolute right to the family allowance during the period of administration of the estate. In re *Pugsley's Estate,* 27 Utah 489, 76 P. 560. Why the period of administration of Mary Brooks for the purpose of an accounting should be broken into three parts and family allowance credited for a first period, disallowed for a second period, and allowed again for a third period, during all of which time the order of the court granting the family allowance was in force and effect, and the validity of the order is not attacked, does not appear (In re *Foreman's Estate,* 59 Okl. 1, 157 P. 279), except the statement that it was not claimed.

From the date fixed by the order that the family allowance should begin, the sum allowed became the property of Mary Brooks. She and she only was entitled to it, and upon her death her heirs, devisees, and legatees are entitled to receive the unpaid amount from the estate of Clarence W. Brooks through the estate of Mary Brooks, deceased. As a matter of law as the allowance accrued it became either the personal property of Mary Brooks or a claim against

the estate of Clarence W. Brooks, deceased, which Mary Brooks or her representatives were entitled to receive in preference to all other charges except expenses of last sickness and funeral expenses of decedent, and costs and charges of administration. Section 7643, supra.

The family allowance is not a part of the decedent's estate for inheritance tax purposes, but passes to the surviving wife, husband, or minor children by virtue of the statute and the court order fixing the amount. It is placed upon the same principle as the widow's statutory one-third of the real estate left by her deceased husband. "Such property does not pass to the widow by will or statutes of inheritance, but by operation of law as property belonging to her in her own right." In re *Green's Estate*, 78 Utah 139, 1 P. (2d) 968, 969.

If David Jenson as administrator were not required to account for that part of the family allowance covered by the beginning and the ending periods of the administration of the estate of Clarence W. Brooks, deceased, by Mary Brooks, it is difficult to find a reason why he should be required to account, as administrator, for the intermediate period. This does not mean that David Jenson should not account either personaly or as administrator for all funds and property that came into his hands in his respective capacities. Whatever funds or property if any that came into his possession in his personal capacity or in his capacity as attorney belonging to the estate of Clarence W. Brooks before the death of Mary Brooks, he should be required to account for in his personal capacity; and whatever funds or property that came into his possession in his capacity as administrator de bonis non of the estate of Clarence W. Brooks, deceased, he and his sureties should be required to account for. The trial court therefore erred in requiring David Jenson, as administrator of the estate of Clarence W. Brooks, deceased, and in holding his sureties, to account for the sum of $1,-215.51 inheritance taxes, and the sum of $2,526.67 family allowance for the intermediate period. David Jenson may be

personally liable therefor; but that matter is not before the court in this proceeding.

There are some references in the testimony as to the Mary Brooks estate, and David Jenson's relation thereto as executor, also some references to David Jenson personally in this proceeding. It does not appear from the record that David Jenson, personally, has ever been made a party hereto. The order of the court affects David Jenson and his sureties in their capacities as administrator and sureties of the said administrator, respectively, of the estate of Clarence W. Brooks, deceased.

For the reasons herein stated, I cannot concur in the conclusions reached in the prevailing opinion. The order and judgment of the lower court should be reversed as to the two items herein referred to.

STRAUP, C. J.

I concur in the dissenting opinion of Mr. Justice MOFFAT.