349 P.2d 1112

Bessie AUERBACH, Madeline A. Werner, and Selma A. Mohr, Plaintiffs and Appellants,

v.

Fannie F. A. SAMUELS et al., and Walker Bank & Trust Company, as Trustees of the Testamentary Trust created under the terms of the Last Will and Testament of Frederick S. Auerbach, deceased, Defendants and Respondents.

No. 9090.

Supreme Court of Utah.

March 3, 1960.

C. M. Gilmour, Reichman, Vernon & Bennett, Salt Lake City, for appellants.

Fabian, Clendenin, Mabey, Billings & Stoddard, Albert J. Colton, Salt Lake City, for respondents.

## CROCKETT, Chief Justice.

This proceeding involves an effort of the plaintiffs to establish a constructive trust of $40,000, plus interest, for unpaid legacies claimed under the will of Frederick S. Auerbach. From a dismissal on the grounds of the statute of limitations and laches they appeal.

The plaintiffs are three survivors of four sisters of deceased, who were named in his will as legatees for $10,000 each on this contingency: "In case the net value of my estate both at my death and at the time of distribution exceeds $350,000." Frederick died in May, 1938, and his will was admitted to probate in June of that year. His widow, Fannie Fox Auerbach (now Fannie F. A. Samuels) was named executrix and was the principal beneficiary of the estate under a trust during her lifetime. In May, 1940, she filed a petition for a number of things including, " * * * confirmation of sale, confirmation of legacies, settlement of final account, distribution and discharge." Federal and state inheritance taxes were deducted in arriving at the net value of $330,382.18. Upon that basis the court ruled that inasmuch as the "net value" was less than $350,000, the legacies should not be paid. For reasons mentioned below the probate was somewhat extended and final distribution of the estate was made in July, 1946.

It is the plaintiffs' position that it was not until June, 1957, when the files of the estate were being investigated for another purpose, that they first discovered the method by which the "net value" had been arrived at. They contend that the executrix erroneously and wrongfully deducted the federal estate and Utah inheritance taxes in computing the "net value" of the estate for the purpose of depriving them of their legacies; whereas, if this had not been done, the estate was large enough that their legacies should have been paid. This is the basis upon which they seek to impress a constructive trust on funds of the estate for their benefit, and to avoid the effect of the statute of limitations and laches operating against them. Supplementing this they maintain that the executrix and those advising her misrepresented the facts as to the true net value, which prevented plaintiffs from appearing at the hearings and establishing their rights to participate in the estate.

The order of June, 1940, above referred to, disallowing the legacies included the provisions:

"2. That the executrix and the estate are exonerated from all liability on account of the conditional, specific legacies of $10,000 awarded to [plaintiffs] * * * and each of them are barred and foreclosed from all rights

to, or claims against the estate, on account [thereof] * * *

* * * * * *

"8. That said estate has been fully administered * * * excepting only the repayment of the loan to the estate by Fannie Fox Auerbach."

As indicated in the above order, the estate was kept open after that proceeding because it owed a debt (approximately $90,-000) to the executrix. Yearly instalments on the loan were repaid until payment was completed in 1946. At that time the Final Account and Petition for Distribution and Discharge was filed. Pursuant thereto a final decree was entered transferring the residue to the testamentary trust and closing the estate. The decree contained the usual recitals:

"That said estate having been duly, faithfully and fully administered in accordance with the testator's last will * * * in accordance with law, said executrix is hereby released, exonerated and discharged."

The difficulty confronting plaintiffs is the binding effect with which such orders and decrees are endowed.[1] At this late date they could pierce the protective armor of the decrees referred to above and successfully assert an interest in the estate only by showing that they had been victims of fraud; and this would have to be of the kind known as extrinsic fraud.

■ Extrinsic fraud is to be distinguished from the ordinary garden variety of fraud. The latter, as involved in a law suit, is sometimes referred to as "intrinsic" fraud because its characteristic is that it occurs within the framework of the actual conduct of the trial and pertains to and affects the determination of the issues presented therein. It may be accomplished by perjury, or by the use of false or forged instruments, or by concealment or misrepresentation of evidence. The responsibility rests upon those conducting the trial to expose and deal with any such deception. Once the issues have been resolved the determination is conclusive and can be attacked only by direct application to the court within the time allowed by law, or on appeal.[2]

1. The following sections of U.C.A.1953 pertain to the conclusiveness of orders and decrees in probate: Secs. 75-1-7, 8; 75-2-4; 75-11-37; as to proof of notice, Sec. 75-14-12; see also In re Linford's Estate, 1951, 121 Utah 113, 239 P.2d 200; In re O'Connor's Estate, 1958, 158·Cal.App.2d 187, 322 P.2d 616; and discussion in 136 A.L.R. 1180.

2. See Rice v. Rice, 117 Utah 27, 212 P.2d 685; In re Rice's Estate, 111 Utah 428, 182 P.2d 111; United States v. Throckmorton, 1878, 98 U.S. 61, 25 L.Ed. 93. We have previously ruled that Sec. 75-11-37, U.C.A.1953 is to be interpreted that final or intermediary accounts in distribution of an estate are conclusive in the absence of fraud; In re Linford's Estate, 121 Utah 113, 239 P.2d 200; In re Raleigh's Estate, 48 Utah 128, 158 P. 705, and In re Brooks' Estate, 83 Utah 506, 30 P.2d 1065.

On the other hand, extrinsic fraud, with which we are here concerned, is of a different character. It is sometimes referred to as collateral fraud because it is the type of fraud which would justify setting aside a decree or judgment on collateral attack. The characteristic peculiar to extrinsic fraud is that it relates, not to the issues which are being contested within the trial, but to happenings outside the actual trial. That is, it pertains to the externals in regard to the manner in which the matter was brought to trial and presented to the court. It is fraudulent conduct of one party practiced outside the actual trial upon the opposing party, or his agents, attorneys or witnesses, whereby the latter is deprived of the opportunity of presenting, or is induced not to present, his contentions to the court, so there is thus prevented any real contest of the issues which would have been presented and tried except for such fraud.[3]

The foundation upon which the plaintiffs base their claim of extrinsic fraud is that Fannie Samuels, the executrix, and their brother, Herbert Auerbach, who with Frederick had been co-manager of the Auerbach Department Store in Salt Lake City, wilfully misrepresented to them that the net value of the estate was less than $350,000 and therefore insufficient to require payment of their legacies. In justification of their reliance upon these representations and their failure to take any action to assert their claims in the estate, they place emphasis in the trust and confidence they reposed in the parties involved due to the relationship between them: that the executrix was their fiduciary and had the duty to look after their interest in administering the estate; that in addition, she was their sister-in-law, with whom they had close and friendly relations; and that a similar but even closer bond existed between them and their brother, Herbert Auerbach.

No doubt there is some merit in the plaintiff's contention that they were entitled to place greater reliance upon fiduciaries, and particularly close relatives, than they would upon others; and there was, therefore, less responsibility upon them to deal at arm's length than otherwise. It is nevertheless necessary for us to examine other aspects of the situation in considering whether extrinsic fraud has been established.

It is not questioned that the executrix did tell the plaintiffs prior to the 1940 decree that there was not enough in the estate for them to receive their legacies nor that Herbert Auerbach also advised them to the same effect in 1939 or 1940. But the question is: does this fill out the pattern necessary to constitute fraud? Its essence is deception. In order to give rise to a legal right or remedy the deceit must

3. Weyant v. Utah Savings & Trust Co., 1919, 54 Utah 181, 201, 182 P. 189, 197, 9 A.L.R. 1119; Phillips Petroleum Co. v. Jenkins, 8 Cir., 91 F.2d 183, 187.

be practiced in conjunction with other requisites. There must be a wilfully false representation of material fact which the defrauded person reasonably relies on to his injury.[4]

■ Whether a wilfully false representation was made depends upon the meaning to be understood from the language of the will that these legacies were " * * * payable only from the surplus of my estate above such net value [$350,000]." Whether such "net value" of the estate was meant to be determined before or after the deduction of federal and state inheritance taxes seems to be a matter upon which reasonable minds could entertain an honest difference of opinion. There was no active concealment of the manner in which the net value of the estate was arrived at. In her petition the executrix set forth the facts in full and asked the court for instructions. After hearing, the court approved the basis of valuation and made the determination that the legacies were not payable. It appears to have been upon the same facts presented to the court and upon the advice of counsel that the information was given to the plaintiffs. Under such circumstances it can hardly be viewed as a "wilfully false" representation.

■ A further aspect of the plaintiffs' efforts to obviate the finality of the probate decrees is their attack upon the notices which were given. It is not questioned that at the initiation of the probate proceeding, and upon all subsequent hearings in the probate, notices were duly posted and mailed to the plaintiffs as required by statute.[5] But the plaintiffs maintain that the notice given on the 1940 petition was insufficient and misleading because the phase of the petition which related to "Report Of Facts Underlying Legacies To Sisters And Petition For Instructions" was not expressly mentioned in the notice. In that regard these observations are pertinent: The notice of the 1940 proceeding did contain the statement, inter alia, that it was for " * * confirmation of legacies." This matter having been attended to in the 1940 proceeding, there was no reason to do it again in 1946. Further, and more conclusive on this question, is the fact that the notices given for the proceedings in 1940 and 1946 both recited that the petition was for "Final Distribution Of The Estate." The plaintiffs were obliged to know that the administration of the estate could not be completed and final distribution and discharge made without a decision as to the payability of their legacies having been made.

There is other evidence as to the plaintiffs' awareness of what was being done in

---

4. For elements of fraud see Pace v. Parrish, 1952, 122 Utah 141, 247 P.2d 273; 27 A.L.R.2d 14.

5. Sec. 75–14–1, U.C.A.1953; as to conclusiveness see Sec. 75–14–12, U.C.A.1953.

158

the probate proceedings. Correspondence between James Ingebretsen, attorney for the estate, and a Mr. Otterbourg, a New York attorney, purporting to be interested on behalf of the plaintiffs (although in a deposition he now states he was not retained for that purpose) was introduced in evidence. A few days after the final decree of distribution in 1946 he wrote for a summary thereof. In response Mr. Ingebretsen advised him of the reason the legacies were not payable and offered to furnish copies of the decrees or to allow Mr. Otterbourg to see his files. The Ingebretsen letter relates that he and Mr. Herbert Auerbach, both of whom are now deceased, "presented the entire matter to the girls [plaintiffs] and left them copies of all pertinent papers." It appears that this correspondence was shown to, and also that this matter was discussed orally with, at least some of the sisters in New York.

■ Upon the basis of the notices the plaintiffs were charged with knowledge of the probate proceedings and under a duty to assert any claims they had or be concluded by the decrees entered. The authorities quite uniformly agree that this applies to rights devolving upon the interpretation of the terms of a will; [6] and this is so even though at a later time the decree may be regarded as not in conformity with the correct construction thereof.[7]

■ We see no reason to disagree with the ruling of the trial court that the plaintiffs are barred from maintaining this action nor the determination implicit therein that they had failed to establish extrinsic fraud. In the absence thereof, the statute of limitations runs from the time of distribution.[8] Even under the plaintiffs' theory of wrongful distribution and constructive trust, the period within which an action must be commenced begins to run from the time the person entitled to the property knows, or by reasonable diligence and inquiry should know, the relevant facts.[9]

Our conclusion affirming the holding that the proceeding is barred by the statute of limitations and laches renders it unnecessary to consider whether the term "net estate" as used in the will meant before or after the deduction of state and federal inheritance taxes.

Affirmed. Costs to defendants (respondents).

WADE, HENRIOD, McDONOUGH and CALLISTER, JJ., concur.

---

6. See Nelson v. Howells, 1930, 75 Utah 461, 286 P. 631.
7. Donovan v. Miller, 1906, 12 Idaho 600, 88 P. 82, 9 L.R.A. 524; Curtz v. Park City Chief Mining Co., 1943, 105 Utah 300, 142 P.2d 163.
8. See 55 A.L.R.2d 220, When Statute of Limitations Starts to Run Against Enforcement of Constructive Trust.
9. Sec. 78–12–26, U.C.A.1953; Ruthrauff v. Silver King Western Mining & Milling Co., 1938, 95 Utah 279, 80 P.2d 338; also see 55 A.L.R.2d 220.